UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

THE UNITED STATES OF AMERICA *ex rel.*
WALTER LAUX;

    Plaintiff,

v.                                      **Filed *in camera* pursuant to**
                                           **31 U.S.C. sec. 3730(b)(2)**

BELL THERAPY, INC., and
PHOENIX CARE SYSTEMS, INC.;

    Defendants.

---

COMPLAINT FOR DAMAGES and INJUCTIVE RELIEF UNDER
THE FALSE CLAIMS ACT
*QUI TAM* ACTION FILED UNDER SEAL

---

NOW COME the Plaintiff(s), the United States of America *ex rel.* Walter Laux and, through their attorneys, the office of the United States Attorney General, and Alan C. Olson & Associates, S.C., by Nicholas M. McLeod and Alan C. Olson; and, as and for a Complaint against the Defendants, Bell Therapy, Inc. and Phoenix Care Systems, Inc., alleges and shows to the Court, as follows:

NATURE OF CASE

1.     This is a *qui tam* action in which Plaintiff-Relator, Walter Laux, an Executive Director employed by Defendant, Bell Therapy Inc., sues to recover losses sustained by the Medicaid Program through the submission of false or fraudulent claims for payment in violation of the False Claims Act ("FCA"), [31 U.S.C. §3729, *et seq.*].

2. Medicaid is a joint federal and state funded health care program that provides basic medical insurance to qualified residents of the United States with low incomes. Medicaid is not a free health care program, as United States citizens, through their taxes, pay a majority of the Medicaid program's costs.

3. Bell Therapy, Inc. significantly funds its operations and its employees through receipt of Medicaid dollars, which are paid for the services provided to and through Community Service Programs for mentally ill individuals.

4. Specifically, Laux alleges that Defendants are liable under the False Claims Act, 31 U.S.C. §§3729 *et seq.*, due to Defendants' conduct in submitting false and fraudulent records, statements, and claims for payment by the United States to the Medicaid Program and conspiring to violate the False Claims Act.

## JURISDICTION AND VENUE

5. Jurisdiction over the claims of the United States of America *ex rel.* Walter Laux under the FCA, [31 U.S.C. §3729, *et seq.*] is conferred on this Court by 28 U.S.C. §§1331, 1345 and 31 U.S.C. §3732(a). In this *qui tam* action under the FCA, the Plaintiff sues on behalf of and in the name of the government and invokes the standing of the government resulting from the fraud injury.

6. The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. §1391, in that Defendants, Bell Therapy, Inc. and Phoenix Care Systems, Inc. can be found within the Eastern District and the unlawful actions occurred in the Eastern District.

## CONDITIONS PRECEDENT

7. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have occurred.

## JURY DEMAND

8. The United States of America *ex rel.* Walter Laux demands that this matter be tried to a jury of Laux's peers.

## PARTIES

9. The United States of America is a sovereign country whose Department of Health and Human Services pays claims submitted by the Defendants through Medicaid for Community Service Program services rendered and provided by the Defendants.

10. Plaintiff-Relator, Walter Laux, is an adult citizen of the United States, residing at 3985 West Kimberly Avenue, Greenfield, Wisconsin 53221.

11. Defendant, Bell Therapy, Inc. ("BT"), is a for-profit corporation organized under the laws of the State of Wisconsin, with its principal offices at 1744 North Farwell Avenue, Milwaukee, Wisconsin 53202 and 5555 North 51st Street, Milwaukee, Wisconsin 53218.

12. Defendant, Phoenix Care Systems, Inc. ("PCS"), is a for-profit corporation organized under the laws of the State of Wisconsin, which owns 100% of BT, with its principal office also at 1744 North Farwell Avenue, Milwaukee, Wisconsin 53202.

13. BT was, at all materials times to this complaint, licensed to administer Community Support Programs pursuant to Wis. Chap. DHS § 63.01 *et seq.* and to collect Medicaid reimbursements for services rendered therein.

14. BT employs Laux, and he works out of its office at 5555 North 51st Street, Milwaukee, Wisconsin 53218.

## THE FALSE CLAIMS ACT

15. The False Claims Act provides, in pertinent part, that any person who

    (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

    (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . .

    (C) knowingly conspire to violate the FCA

    ***

    is liable to the United States Government [for statutory damages and such penalties as are allowed by law].

31 U.S.C. §§ 3729(a)(1)-(3) (2006), amended by, 31 U.S.C. §§ 3729(a)(1)(A)-(C) (West 2010).

16. The False Claims Act further provides that "knowing" and "knowingly"

    (A) mean that a person, with respect to information--

        (i) has actual knowledge of the information;

        (ii) acts in deliberate ignorance of the truth or falsity of the information; or

        (iii) acts in reckless disregard of the truth or falsity of the information; and

    (B) require no proof of specific intent to defraud.

31 U.S.C. §3729(b) (2006), amended by, 31 U.S.C. § 3729(b)(1) (West 2010).

4

## THE MEDICAID PROGRAM

17. Title XIX of the Social Security Act, 42 U.S.C. §1396 *et seq*. ("Medicaid Statute"), establishes the Medicaid and CHIP Payment and Access Commission, commonly referred to as the Medicaid Program (the "Medicaid Program" or "Medicaid").

18. Medicaid provides for federal reimbursement for Medicaid home and community-based services as outlined in 42 C.F.R. § 440.130.

## APPLICABLE PROGRAMS

19. The State of Wisconsin, through Wis. Chap. DHS § 63 has established Community Support Programs for Chronically Mentally Ill Persons (CSPs), which are funded by State and Federal Medicaid dollars.

20. Wisconsin's Department of Health Services oversees the State's Medicaid Program, including the CSP programs. Wisconsin's Division of Health Care Access and Accountability determines "contracted rates" for CSPs.

## OPERATIVE FACTS

21. BT has two CSPs certified and licensed under Wis. Chap. DHS § 63.03.

22. CSP-North (CSP-N) has traditionally employed 4 nurses, and CSP-South (CSP-S) has traditionally employed 2 nurses.

23. Until October 1, 2015, BT administered its own billing, including billing claims for State and Federal Medicaid reimbursements for the CSP programs.

24. Beginning on October 1, 2015, Milwaukee County's Behavioral Health Division ("BHD") implemented a new electronic health record ("EHR") for all CSP providers.

5

25. The BHD now uses the EHR to submit Medicaid claims for reimbursement. BT initially received and continues to receive its Medicaid service payments from BHD as advances.

26. When the BHD began the new billing procedure for BT, it collected credentialing information for BT's care providers, including nurses, by pulling their professional licenses, checking their degrees, and conducting caregiver background checks.

27. When submitting Medicaid reimbursement claims for services rendered in CSPs, rendering providers, such as BT, or their billing agents, must denote a two-character modifier, which prescribes the reimbursement rate to be applied to each particular provider. The modifiers are based on the relevant level of education attained by the providers.

27. When BT conducted its own billing, it always denoted all of its CSP nurses with the modifier "HN", which indicates that the nurses have Bachelor's degrees.

28. Nurses' time at the CSPs is billed in 15-minute "units". A unit is defined as "assertive community treatment, face-to-face, 15 minutes or less".

29. The Federal Medicaid share of the CSP services is 58.27% as of October 1, 2014.

30. Bachelor's degree level nurses receive a Federal share of $8.74 for each unit as of October 1, 2014.

31. Nurses with Associate's degrees receive a Federal share of $3.28 for each unit as of October 1, 2014.

32. In early January 2016, BT received the Explanation of Benefits (EOB) for the first fiscal quarter (Q1) of 2016 (October 1, 2015 to December 31, 2015).

33. The Q1 EOB showed that CSP-N's nurses were being reimbursed for the modifier HM (rather than HN), at the rate of $3.28 per unit.

34. Laux reviewed BT Human Resources spreadsheets to determine that no nurses working for CSP-N have Bachelor's degrees in relevant fields. BT employees confirmed this.

35. Laux determined from PCS's Accounts Receivable Manager, Mary Schram, and BT's Director of Community Services, Rebecca Frank, that BT had always attached the modifier HN and received the reimbursements for nurses with Bachelor's degrees.

36. Laux determined by interviewing Carolyn Davidson, APNP, who first worked as a nurse CSP-N in 2009, that she was the only nurse with a Bachelor's degree or higher in the program during the relevant period.

37. Douglas Higbie, PhD, the former director of BT's CSP programs, was terminated in October 2015.

38. Laux determined that on forms completed and maintained by Higbie, including a Wisconsin Medicaid Cost Reporting form, that Higbie manipulated the terminable degrees of the CSP nurses to falsely show that they had Bachelor's degrees.

39. Each nurse in the CSPs bills approximately 900 units per month on average.

40. The difference in the reimbursed rates for nurses with Associate's degrees versus nurses with Bachelor's degrees has been $5.46 per unit since October 1, 2014.

41. The difference in the reimbursed rates for nurses with Associate's degrees versus nurses with Bachelor's degrees was $5.49 per unit prior to October 1, 2014.

42. Based on averages, estimates, information, and belief, BT received approximately $800,000 in improper Medicaid reimbursements since July 2010 as a result of overbilling for nurses in the CSP program(s).

43. Laux learned during his investigation that Elsie Cook, a non-nurse technical support employee, and a member of CPS-N's staff with only a high school diploma, improperly billed for her time.

44. CSPs are not entitled to Medicaid reimbursements for "group time".

45. Cook prepared breakfast(s) for groups clients of the CSP programs.

46. Cook submitted time, which was billed to Medicaid, for each individual client for each unit of time she spent preparing the breakfast(s).

47. The improper billing resulted in a windfall for BT because the time was not reimbursable at all under Medicaid, and Cook's billings were clearly duplicative.

48. Laux used his position at BT to stop Cook's conduct.

49. Laux learned through his investigation that some time billed by BT to Medicaid did not include reimbursable face-to-face treatment, but was generated by repackaging medications for clients.

50. Laux learned through his investigation that Higbie had engaged in other unethical and improper billing practices during his time leading CSP-N.

51. Between January 2016 and June 1, 2016, Laux reported the improper billing and overpayments to BT's and PCS's upper management and owner.

52. BT's and PCS's management and owner have not communicated to Laux or indicated any intention to apprise Medicaid, the Federal government, or the State of Wisconsin of the improper billing and false claims.

8

## FIRST CLAIM FOR RELIEF
(FALSE CLAIMS ACT-31 U.S.C. § 3729(A)(1)(A))

53. As and for a first claim for relief, Laux and the United States of America re-assert the allegations recited above and fully incorporate those paragraphs herein by reference.

54. The allegations more particularly described above constituted fraudulent claims for payment by BT and PCS to the United States of America in violation of the FCA, [31 U.S.C. § 3729, *et seq.*].

55. By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial; and therefore is entitled to treble damages under the False Claims Act, plus civil penalties of not less than $5,500 and not more than $11,000 per claim. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461, and 64 Fed. Reg. 47099, 47103 (1999), the civil penalties were adjusted to $5,500 to $11,000 for violations occurring on or after September 29, 1999.

## SECOND CLAIM FOR RELIEF
(FALSE CLAIMS ACT-31 U.S.C. § 3729(A)(1)(B))

56. As and for a second claim for relief, Laux and the United States of America re-assert the allegations recited above and fully incorporate those paragraphs herein by reference.

57. The allegations more particularly described above constituted material false certification by BT and PCS to the United States of America, in violation of the FCA, [31 U.S.C. §3729, *et seq.*].

58. By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial; and therefore is entitled to treble damages under the False

9

Case 2:16-cv-01039-NJ   Filed 08/05/16   Page 9 of 11   Document 1

Claims Act, plus civil penalties of not less than $5,500 and not more than $11,000. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), and 64 Fed. Reg. 47099, 47103 (1999), the civil penalties were adjusted to $5,500 to $11,000 for violations occurring on or after September 29, 1999.

## THIRD CLAIM FOR RELIEF
### (FALSE CLAIMS ACT-31 U.S.C. § 3729(A)(1)(C))

59. As and for a third claim for relief, Laux and the United States of America re-assert the allegations recited above and fully incorporate those paragraphs herein by reference.

60. The allegations more particularly described above constituted conspiracies to violate the False Claims Act in presenting false claims for Medicaid money, making false records in support of claims for Medicaid money, and avoiding Defendants' obligations to refund Medicaid money that was overpaid and/or overbilled.

Wherefore Plaintiff, the United States of America *ex rel.* Walter Laux, demands relief as follows:

> A. Judgment against the above-named Defendants awarding Laux at least 15 percent but not more than 30 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which Laux substantially contributed to the prosecution of the action;
>
> B. Judgment against the above-named Defendants awarding Laux an amount for reasonable expenses which the Court finds to have been necessarily incurred;
>
> C. Judgment against the above-named Defendants awarding Laux an amount for reasonable attorneys' fees and costs; and

D. Such other relief as the Court deems just and equitable.

Dated this 5th day of August, 2016.

s/ Nicholas M. McLeod
Nicholas M. McLeod, Bar Number: 1057988
Alan C. Olson, Bar Number: 1008953
Attorneys for Relator
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: NMcLeod@Employee-Advocates.com

11